FILED
11/15/22 3:42 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : Case No. 18-24621-GLT |
| | : |
| **MATTHEW W. YOUNG** and | : Chapter 13 |
| **CARLA R. YOUNG**, | : |
| | : |
| *Debtors*. | : Related to Dkt. Nos. 48, 53, 57 |
| | : |

| | |
|---|---|
| Daniel R. White, Esq. | Owen W. Katz, Esq. |
| Zebley Mehalov & White, P.C. | Chapter 13 Trustee |
| Uniontown, PA | Pittsburgh, PA |
| *Attorney for the Debtors* | *Attorney for Ronda J. Winnecour* |

## <u>MEMORANDUM OPINION</u>

Sometimes even the most settled legal principles need to be repeated. For nearly four decades, jurisdictions across the country have adopted strict rules governing the engagement and compensation of all professionals who represent a debtor, regardless of whether they know their client is a debtor or ever set foot in the bankruptcy court. The prevailing view is that the professional's fees are at risk unless an employment application is promptly filed and approved before services are rendered. As this case shows, the word is somehow not yet out. Having failed to obtain pre-approval to pursue a personal injury claim on behalf of debtor Carla Young two years ago, Bailey Cowan Heckaman PLLC and Ennis & Ennis, P.A. (together, the "Applicants") now seek approval *nunc pro tunc*. Ronda Winnecour, the chapter 13 trustee, opposes the request, asserting that the Applicants have not satisfied the appropriate standard under *F/S Airlease II, Inc. v. Simon*.[1] For the reasons stated below, the Court finds the Applicants failed to establish "extraordinary circumstances" warranting retroactive relief.

---

[1]    See <u>F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)</u>, 844 F.2d 99 (3d Cir. 1988).

## I.    BACKGROUND

Debtors Matthew and Carla Young filed a voluntary chapter 13 petition on November 29, 2018.[2]  Over a year later, Mrs. Young discovered that she might have a personal injury claim arising from her use of an implanted medical device.[3]  She engaged the Applicants to represent her in a class action suit.[4]  The Applicants drafted an employment agreement between themselves and Mrs. Young, which she signed on August 8, 2020.[5]  Although the Debtors' bankruptcy was active at the time, Mrs. Young neither sought approval of the Applicants' retention nor disclosed the asset.

Two years later, the Debtors filed an application for *nunc pro tunc* employment of the Applicants as proposed special counsel.[6]  The application seeks retroactive approval of both the Applicants' engagement and their proposed compensation as outlined in the parties' August 2020 employment agreement.[7]  In support, the application asserts that the Applicants did not learn of Mrs. Young's bankruptcy until July 2022.[8]  The chapter 13 trustee opposes the distribution of attorney fees and expenses requested by the Debtors.[9]  She argues that *nunc pro tunc* relief would harm unsecured creditors and contends that there has been no information provided showing that

---

[2]        See *Voluntary Petition for Individuals Filing for Bankruptcy*, Dkt. No. 1.

[3]        *Nunc Pro Tunc Motion to Approve Employment of Special Counsel*, Dkt. No. 48 at ¶ 2.

[4]        Id. at ¶ 3.

[5]        *Power of Attorney and Employment Agreement*, Dkt. No. 53.

[6]        See *Nunc Pro Tunc Motion to Approve Employment of Special Counsel*, Dkt. No. 48.

[7]        Id. at 2.

[8]        Id. at ¶ 9.

[9]        See *Chapter 13 Trustee's Response to Nunc Pro Tunc Motion to Approve Employment of Special Counsel*, Dkt. No. 57; see also *Chapter 13 Trustee's Response to Motion to Approve Settlement of Personal Injury/Class Action Claim and Proposed Distribution*, Dkt. No. 58.

*nunc pro tunc* approval is appropriate.[10]  The chapter 13 trustee did not object to the Applicants'

qualifications or disinterestedness.

      The Court conducted a hearing on the matter where some problematic

inconsistencies emerged.[11]  First, in line with their assertion that they were unaware of Mrs.

Young's bankruptcy until 2022,  the Applicants explained that their standard procedures do not

vet clients for bankruptcy cases until after a settlement is reached.[12]  That story began to unravel

when, after some follow up questions, the Applicants added that Mrs. Young "may have" checked

off that there was an existing bankruptcy on her intake forms.[13]  Not only did this statement suggest

that the Applicants have procedures in place to ask about pending bankruptcies before a settlement,

it implies that Mrs. Young disclosed her bankruptcy when she retained them.  The Applicants then

tried to dismiss the significance of this disclosure, explaining that because Mrs. Young also had a

2019 bankruptcy which had been terminated, they "assumed that all subsequent [cases] had been

closed."[14]  That said, the Court can find no record that Mrs. Young had a separate bankruptcy in

2019,[15] nor would the termination of a bankruptcy in 2019 have an impact on the status of a 2018

filing.

      During the hearing, the Applicants also explained that they practice law

nationwide.[16]  Yet the Applicants also insist this was the first time either firm discovered an active

---

[10]    <u>See</u> *Chapter 13 Trustee's Response to Nunc Pro Tunc Motion to Approve Employment of Special Counsel*, Dkt. No. 57 at ¶ 3.

[11]    *Hearing Held on 09/14/2022*, Dkt. No. 59.

[12]    *Audio Recording of September 14, 2022 Hearing* at 1:31:00–1:31:55 p.m.

[13]    <u>Id.</u> at 1:32:25–1:32:28 p.m.

[14]    <u>Id.</u> at 1:32:25–1:32:54 p.m.

[15]    While there is no record of a separate 2019 bankruptcy filing, there is a record of a 2019 adversary proceeding (19-02139-GLT) explicitly related to the Debtors' 2018 filing.

[16]    *Audio Recording of September 14, 2022 Hearing* at 1:31:00–1:31:10 p.m.

bankruptcy after the fact, and they claim ignorance of any legal precedent requiring court approval of their employment before rendering legal services.[17]  At the end of the hearing, the Court ruled that it would grant the application prospectively.[18]

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## III.    DISCUSSION

To receive compensation under section 330 of the Bankruptcy Code,[19] a professional's employment must be approved under section 327.[20]  Although there is no express requirement that retention be approved by the court before the services are rendered, courts generally read this requirement into the statute.[21]  The purpose of requiring court approval early in the professional's employment is to allow bankruptcy courts an opportunity to evaluate conflicts, general competency, and the need for the services to be performed.[22]  It also provides

---

[17]    Id. at 1:31:00¬1:31:55 p.m.

[18]    See Dkt. No. 59.

[19]    Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, et seq. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[20]    See Lamie v. U.S. Trustee, 540 U.S. 526, 538-39 (2004); F/S Airlease, 844 F.2d at 108; 3 COLLIER ON BANKRUPTCY ¶ 330.02[2][a] (Richard Levin & Henry J. Sommer eds.,16th ed.).

[21]    See In re Singson, 41 F.3d 316, 319 (7th Cir. 1994) (prior approval is "strongly preferred"); F/S Airlease, 844 F.2d 99; Matter of Consolidated Banchares, Inc., 785 F.2d 1249, 1254 (5th Cir. 1986) (citing Matter of Triangle Chemicals, Inc., 697 F.2d 1280, 1289 (5th Cir. 1983); DeRonde v. Shirley (In re Shirley), 134 B.R. 940, 944 (B.A.P. 9th Cir. 1992); In re Anicom, Inc., 273 B.R. 756, 761 (Bankr. N.D. Ill. 2002).

[22]    See In re Arkansas Co., 798 F.2d 645, 648 (3d Cir. 1986); Fairnash v. Vergos (In re Aultman Enterprises), 264 B.R. 485, 490 (E.D. Ten. 2001).

bankruptcy courts with a means of control over administrative expenses.[23]   In addition, a timely employment application promotes transparency by ensuring that no professionals are working surreptitiously on the debtor's behalf, only to emerge from the shadows after court oversight has ended.

The penalty for noncompliance is severe.   A professional who acts without obtaining court approval in accordance with any applicable local rules risks losing compensation for such services.[24]

Despite the general requirement that retention of a professional be approved by the court before rendering services, bankruptcy courts may grant retroactive approval of professional employment in some cases.[25]   As courts of equity, bankruptcy courts have historically permitted the use of *nunc pro tunc* and *post facto* orders to grant retroactive approval of employment when doing so would avoid inequitable consequences.[26]   In *In re F/S Airlease*, the United States Court of Appeals for the Third Circuit created a two-part test to determine when retroactive approval is

---

[23]   Id.

[24]   See In re Albrecht, 233 F.3d 1258, 1261 (10th Cir. 2000) (absent court approval under section 327, professionals may not obtain compensation under section 503(b)(1)(A)); In re Federated Dep't Stores, Inc., 44 F.3d 1310, 1319-20 (6th Cir. 1995) (overturned the lower courts' authorization of retention of an investment banker); In re Thornton's Millwork, Inc., 209 B.R. 645, 648 (Bankr. M.D. Pa. 1997) (compensation paid to professionals who have not obtained prior appointment may constitute transfers made without court authority and be subject to avoidance as unauthorized postpetition transfers); Matter of Timberline Prop. Dev., Inc., 115 B.R. 787, 794 (Bankr. D.N.J. 1990) (real estate broker who sold debtor's property was not entitled to administrative expense treatment of its commission claim as it failed to first obtain court approval).

[25]   See F/S Airlease, 844 F.2d at 105 (referencing Arkansas, 798 F.2d at 646).

[26]   See Cushman & Wakefield of CT v. Keren Ltd. P'ship. (In re Keren Ltd. P'ship.), 189 F.3d 86, 87 (2nd Cir. 1999); Arkansas, 798 F.2d at 648 (bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power); Triangle Chemicals, 697 F.2d at 1288-89 (neither bankruptcy statute nor rule preclude the bankruptcy judge in the exercise of its sound discretion, and as a court of equity administering equitable principles, from entering an order nunc pro tunc authorizing the employment of an attorney for the debtor in possession); Aultman, 264 B.R. at 491 (bankruptcy court can grant an application for retroactive approval of employment in exceptional cases).

appropriate.[27]  Many other jurisdictions implement this same test.[28]  First, the bankruptcy court

must find, after notice and a hearing, that the applicant satisfies the disinterestedness requirements

of section 327(a) and would therefore have been appropriately appointed initially.[29]  Second, the

bankruptcy court must, in the exercise of its discretion, determine that the particular circumstances

presented are so extraordinary as to warrant retroactive approval.[30]

      Before turning to the merits, the Court must first address an issue of semantics.  The

Debtors' application seeks *nunc pro tunc* relief, but their application can be more accurately

characterized as a request for *post facto* relief.[31]  In fairness, the Third Circuit used the terms *nunc*

*pro tunc*, *post facto*, and retroactive relief somewhat interchangeably in *F/S Airlease*.[32]  Even so,

the Supreme Court of the United States has since reminded courts that a *nunc pro tunc* order

"presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court."[33]

*Nunc pro tunc* orders, or "now for then" orders,[34] are meant to "reflect the reality" of what has

already occurred.[35]  Therefore, the court cannot use *nunc pro tunc* orders to make the record what

---

[27]  See F/S Airlease, 844 F.2d at 105.

[28]  See Lazzo v. Rose Hill Bank (In re Schupbach Investments, L.L.C.), 808 F.3d 1215, 1220 (10th Cir. 2015); Keren, 189 F.3d at 87; In re Jarvis, 53 F.3d 416, 418 (1st Cir. 1995); see generally Okamoto v. THC Fin. Corp. (In re THC Fin. Corp.), 837 F.2d 389, 392 (9th Cir. 1988); Aultman, 264 B.R. at 493; In re Hydro Servs., Inc., 277 B.R. 309, 311 (Bankr. E.D. Tex. 2001); distinguish from In re Singson, 41 F.3d 316, and In re Anicom, 273 B.R. at 762 (applying the "excusable neglect" standard used in the 7th Circuit).

[29]  F/S Airlease, 844 F.2d at 105.

[30]  Id.

[31]  See Albrecht, 233 F.3d 1258; see also Jarvis, 53 F.3d at 418 n.2 (describing retroactive employment applications as *nunc pro tunc* is "unfaithful to the accepted usage of that term in connection with the correction of court records" … "To avoid this linguistic snare, we prefer the term 'post facto'").

[32]  See generally F/S Airlease, 844 F.2d 99.

[33]  See Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano, 140 S.Ct. 696, 700-1 (2020) (quoting Cuebas y Arredondo v. Cuebas y Arredondo, 223 U.S. 376, 390 (1912)).

[34]  Nunc Pro Tunc, BLACK'S LAW DICTIONARY (11th ed. 2019).

[35]  See Roman Cath. Archdiocese, 140 S.Ct. at 700-01 (citing Missouri v. Jenkins, 495 U.S. 33, 49 (1990)).

it is not.[36]  Here, the Applicants failed to seek pre-employment approval for two years due to their

own oversight, not due to inadvertence on behalf of the court.  Granting the Debtors' application

as a *nunc pro tunc* order would not reflect the reality of what has already occurred and would

therefore be a misapplication of such authority.  That said, the Court still may grant *post facto*, or

retroactive retention of the Applicants under *F/S Airlease*.

Based on the record before the Court, the appointment of the Applicants would

likely have been approved had the application been timely filed.  The parties agree that the

Applicants are competent to provide the required legal services and are disinterested.  Further,

attorneys from both firms submitted signed affidavits affirming that neither firm represents any

interests adverse to the Debtors or their estate.[37]  Thus, the issue is whether retroactive relief dating

back two years is warranted.

To justify retroactive approval, the Third Circuit instructs that bankruptcy courts

must find "extraordinary circumstances."[38]   In considering what constitutes extraordinary

circumstances, bankruptcy courts will look at factors such as:

> whether the applicant or some other person bore responsibility for
> applying for approval; whether the applicant was under the time
> pressure to begin service without approval; the amount of delay after
> the applicant learned that initial approval had not been granted; the
> extent to which compensation to the applicant will prejudice
> innocent third parties; and other relevant factors.[39]

---

[36]   Id. (quotation marks omitted).

[37]   *Affidavit of Proposed Attorney, Andrea McGinnis*, Dkt. No. 48-1; *Affidavit of Proposed Attorney, Holly K. Innis*, Dkt. No.  48-2.

[38]   F/S Airlease, 844 F.2d at 105.

[39]   Id.

Here, none of the presented facts establish the extraordinary circumstances needed to excuse the two-year delay in seeking court approval of employment. Rather, the delay is attributable to oversight and poor judgment on behalf of the Applicants.

A simple search of the Public Access to Court Electronic Records service, more commonly known as PACER, would have revealed the Debtors' 2018 bankruptcy filing in 2020. As explained by the court in *In re Fischer*, a PACER search should be part of every counsel's basic due diligence when taking on a new client:

> The question of whether a plaintiff is in bankruptcy is . . . very significant. Every trial attorney has or should have a PACER account with which to check federal court pleadings, including bankruptcy court pleadings. It takes only a few moments to check a client's name on PACER before distributing settlement proceeds to determine whether that client is in bankruptcy. To rely on a client's representation that he or she is not in bankruptcy is not enough. The client may not notice or understand the "not in bankruptcy" language; the client may be confused as to whether he or she is in bankruptcy; and (not surprisingly) sometimes clients will lie, particularly if they think that answering correctly may cause them to get less money. In this court's view, if a lawyer fails to check PACER to confirm that a client is not in bankruptcy immediately before distributing settlement proceeds, the lawyer runs the risk of being held liable for the settlement funds that would have otherwise gone into the bankruptcy estate. Of course, a prudent lawyer should also check PACER upon initial retention as well so that his or her employment can be approved by the bankruptcy court on a timely basis.[40]

In fact, several courts (including this one) have held that PACER essentially provides constructive notice of a debtor's bankruptcy to any prospective special counsel.[41] Although the Applicants state that they do not normally check for bankruptcies or apply for employment until after a settlement is reached,[42] their reckless approach needlessly jeopardizes their compensation.

---

[40]   In re Fisher, No. 16-1911, 2019 WL 1875366, at *2 (Bankr. S.D. Ala. Mar. 27, 2019).

[41]   Id.; see also In re McLemore, No. 20-32131-WRS, 2022 WL 362915, at *4 (Bankr. M.D. Ala. Feb. 7, 2022); In re Smith, 538 B.R. 867, 874 (Bankr. M.D. Ala. 2015); see also In re Solomon, No. 16-21740-GLT, Dkt. No. 131 (Bankr. W.D. Pa. July 16, 2019).

[42]   *Audio Recording of September 14, 2022 Hearing* at 1:31:00–1:32:20 p.m.

Frankly, it is surprising that the Applicants have used these procedures this long without running afoul of an unsympathetic trustee or bankruptcy court.

Yet the issue is not really the Applicants' lack of diligence. Rather, the larger issue here is that the Applicants concede they had *actual notice* of Mrs. Young's bankruptcy and decided to proceed without further protective action. Despite the Applicants' assertion that they were unaware of Mrs. Young's bankruptcy until July 2022, they admitted that Mrs. Young "may have" checked off that there was an active bankruptcy on her intake forms.[43] In fact, she must have done so because the Applicants admittedly discovered a purported 2019 bankruptcy which had been terminated.[44] This explanation is odd because the only record of a 2019 filing is not a separate bankruptcy, but an adversary proceeding explicitly related to the Debtors' 2018 filing. Still, the Applicants' decided to proceed blindly despite Mrs. Young's disclosure of an existing bankruptcy. Poor judgment is not an extraordinary circumstance that would warrant retroactive relief, especially when the current predicament could have been so easily avoided.

It is also worth recognizing that granting the Applicants two years' worth of retroactive compensation would prejudice general unsecured creditors. Although the Debtor has scheduled and exempted the net proceeds of the class action settlement, the full balance of the settlement has not, and cannot, been exempted.[45] Any remaining non-exempt amount is property of the estate. Retroactive approval would therefore unfairly prioritize the Applicants' claim over the general unsecured creditors. Again, because the delay in the employment application appears

---

[43]    Id. at 1:32:25–1:32:28 p.m.

[44]    Id. at 1:32:25–1:32:54 p.m.

[45]    See *Amended Schedule A/B: Property*, Dkt. No. 61 at 8; *Amended Schedule C: The Property You Claim as Exempt*, Dkt. No. 61 at 11; see also 11 U.S.C. §§ 522(d)(11)(D), 522(d)(5); see also *Chapter 13 Trustee's Response to Nunc Pro Tunc Motion to Approve Employment of Special Counsel*, Dkt. No. 57 at 2.

to result from oversight and poor judgment on behalf of the Applicants, there are no justifiable grounds for such prejudice.

## IV.     CONCLUSION

In light of the foregoing, Debtors' application to employ Bailey Cowan Heckaman PLLC and Andrea McGinnis and Holly Ennis as Special Counsel, including approval of retroactive compensation, will be approved, but as of August 4, 2022, the date the Application was filed. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: November 15, 2022                          **GREGORY L. TADDONIO**
                                                  **CHIEF UNITED STATES BANKRUPTCY JUDGE**